# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BANK OF AMERICA, N.A., ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:16-cv-00286-GMN-GWF |
| vs. ) | |
| ) | **ORDER** |
| SOLERA AT STALLION MOUNTAIN ) | |
| HOMEOWNERS ASSOCIATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

Pending before the Court is the Motion for Partial Summary Judgment, (ECF No. 64), filed by Plaintiff Bank of America, N.A. ("BANA"). Defendant and Counterclaimant NV Eagles, LLC ("NV Eagles") filed a Response, (ECF No. 65), and BANA filed a Reply, (ECF No. 69).

Also pending before the Court is the Motion for Summary Judgement, (ECF No. 66), filed by NV Eagles. BANA filed a Response, (ECF No. 70), and NV Eagles filed a Reply, (ECF No. 71).

For the reasons discussed below, the Court **GRANTS** BANA's Motion for Partial Summary Judgment and **DENIES** NV Eagles' Motion for Summary Judgment.

## I.   BACKGROUND

This case arises from the non-judicial foreclosure sale of real property located at 6061 Fox Creek Avenue, Las Vegas, Nevada 89122 (the "Property"). (*See* Deed of Trust ("DOT"), Ex. A to BANA's MSJ, ECF No. 64-1). On August 24, 2007, Catherine Samoska ("Borrower") obtained a loan from BANA in the amount of $283,386.00, secured by a DOT identifying BANA as the beneficiary. (*Id.*). The DOT was recorded on August 27, 2001. (*Id.*).

On September 14, 2009, upon Borrower's failure to stay current on her loan obligations, BANA recorded a Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default") declaring all sums "immediately due and payable." (Notice of Default and Election to Sell, Ex. 4 to NV Eagles' MSJ, ECF No. 66-4).  BANA subsequently recorded two recissions of the Notice of Default, one on March 8, 2011, and one on October 12, 2018. (*See* 2011 Recission, Ex. 8 to NV Eagles' MSJ, ECF No. 66-8); (2018 Recission, Ex. A to BANA's Reply, ECF No. 69-1).  BANA never foreclosed on the Property.

On November 1, 2010, upon Borrower's failure to stay current on the payment of her homeowners' association assessments, Solera at Stallion Mountain Unit Owners' Association, ("HOA"), initiated foreclosure proceedings on the Property through its agent, Nevada Association Services, Inc. ("NAS") by recording a Notice of Delinquent Assessment Lien. (*See* Notice of Delinquent Assessment Lien, Ex. B to BANA's MSJ, ECF No. 64-2).  On December 21, 2010, NAS subsequently recorded a Notice of Default and Election to Sell. (Notice of Default, Ex. C to BANA's MSJ, ECF No. 64-3).  On August 22, 2011, NAS recorded a Notice of Trustee Sale. (Notice of Trustee Sale, Ex. D to BANA's MSJ, ECF No. 64-4).

On September 12, 2011, BANA, through its counsel Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer"), sent a letter to NAS offering to pay the superpriority amount owed on the HOA's lien. (Miles Bauer Aff., Ex. E to BANA's Resp., ECF No. 64-5).  NAS responded with a full accounting that itemized the amounts Borrower owed. (*See* Accounting, Ex. 2 to Miles Bauer Aff., ECF No. 64-5).  The accounting indicated that nine months of common assessment fees of $300.00, without any maintenance or nuisance or abatement charges, made the superpriority portion of HOA's lien $900.00. (*See id.*).  On October 20, 2011, Miles Bauer tendered $900.00 to NAS, on BANA's behalf, to "satisfy its obligations to the HOA as a holder of a first deed of trust against the [P]roperty." (Miles Bauer Letter, Ex. 3 to Miles Bauer Aff., ECF No. 64-5).

Despite Miles Bauer's tender, HOA, through NAS, proceeded with the foreclosure and sold the Property to Defendant Underwood Partners, LLC ("Underwood") for $10,000.00 on April 19, 2013; Underwood recorded the foreclosure deed on May 21, 2013. (Foreclosure Deed, Ex. F to BANA's MSJ, ECF No. 64-6). On September 18, 2013, Underwood transferred the Property to NV Eagles, who recorded the deed on October 18, 2013. (Sale Deed, Ex. H to BANA's MSJ, ECF No. 64-8).

BANA initiated this lawsuit, asserting the following claims against NV Eagles: (1) quiet title with the requested remedy of declaratory judgment; and (2) injunctive relief. (Compl. ¶¶ 31–58, 73–79, ECF No. 1). NV Eagles filed a counterclaim also asserting a claim for declaratory judgment of quiet title against BANA. (Countercl. ¶¶ 21–26, ECF No. 7). In the instant Motions, (ECF Nos. 64, 66), BANA and NV Eagles seek summary judgment on their respective quiet title claims.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).   A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.   "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.   In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).   In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.   If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.   It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).   However, the nonmoving party "may not rely on

denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.    **DISCUSSION**

### A.  **Quiet Title**

BANA and NV Eagles move for summary judgment on their competing quiet title claims. (BANA's MSJ 2:1–4, ECF No. 64); (NV Eagles' MSJ 5:4–7, ECF No. 66).  BANA argues that its first DOT continues to encumber the Property because it satisfied the HOA superpriority lien by tendering payment of $900.00 to NAS. (BANA's MSJ, Argument, 3:26–5:4).  In contrast, NV Eagles asserts that it owns the Property free and clear of BANA's DOT because the foreclosure deed contains the required statutory recitals, providing clear title to the purchaser. (NV Eagles' MSJ 6:22–24).

Under NRS 116.3116, the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014).  The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *Id.* at 411; *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 373 P.3d 66, 70–74 (Nev. 2016).  "[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc).  In addition to full tender of the superpriority amount, "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Id.*

Here, BANA points to evidence indicating that at the time of NAS's recordation of the notice of delinquent assessment lien, the monthly common assessments were $300.00. (*See* Accounting, Ex. 2 to Miles Bauer Aff.).  The statement of account also shows that HOA had not assessed any maintenance or nuisance abatement charges at the time of BANA's payment. (*Id.*).  Thus, HOA's superpriority lien was limited to the sum of nine months' common assessments totaling $900.00. (*See* Miles Bauer Letter, Ex. 3 to Miles Bauer Aff.).  Finally, BANA has introduced evidence that Miles Bauer, on BANA's behalf, sent NAS a check for $900.00, which NAS refused to accept. (*See* Miles Bauer Aff. ¶¶ 9–10).  Consequently, because BANA's payment satisfied HOA's superpriority lien, BANA's attempted payment cured the default as to that portion of HOA's lien.

NV Eagles, for its part, fails to put forth evidence creating a genuine issue of fact as to BANA's points. (*See* NV Eagles' MSJ, Statement of Facts, 2:19–5:7).  Instead, NV Eagles argues that the HOA foreclosure sale was proper and extinguished the DOT because, under NRS 116.31166, the foreclosure deed recitals are conclusive as to "(a) Default, the mailing of

the notice of delinquent assessment, and the recording of the notice of default and election to sell; (b) the elapsing of 90 days; and (c) The giving of notice of sale." (*Id.* 6:25–8:7). However, the fact that certain deed recitals are accorded conclusive effect under NRS 116.3116 does not conclusively defeat equitable relief in a quiet title action. *See Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp. Inc.*, 366 P.3d 1105, 1112 (Nev. 2016) (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Accordingly, the deed recitals alone do not entitle NV Eagles to summary judgment. *See id.*

Additionally, NV Eagles claims Nevada's ancient mortgage statute, NRS 106.240, terminates any lien created by BANA's DOT.  NRS 106.240 provides:

> The lien heretofore or hereafter created of any mortgage or deed of trust upon any real property, appearing of record, and not otherwise satisfied and discharged of record, shall at the expiration of 10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due, terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged.

NV Eagles has produced evidence that on September 14, 2009, BANA accelerated the mortgage on the Property, requiring the remaining balance to become wholly due. (*See* Notice of Default and Election to Sell, Ex. 4 to NV Eagles' MSJ.  Because BANA never subsequently foreclosed on the Property, and more than ten years have passed since BANA accelerated the mortgage, NV Eagles claims that, under NRS 106.240, BANA's DOT has been extinguished. (NV Eagles' MSJ 10:16–19).  However, the Nevada Supreme Court recently indicated that a recission of a Notice of Default and Election to Sell recorded before the ten-year period's expiration "effectively cancel[s] the acceleration." *Glass v. Select Portfolio Servicing, Inc.*, No. 78325, 2020 WL 3604042, at *1 (Nev. July 1, 2020).

In the present case, BANA rescinded its Notice of Default both on March 8, 2011, and on October 12, 2018. (*See* 2018 Rescission, Ex. A to BANA's Reply); (2011 Recission, Ex. 8

to NV Eagles' MSJ). [1]   As such, BANA cancelled the acceleration, and the DOT was not

extinguished under NRS 106.240. *See Glass,* 2020 WL 3604042, at *1. *See also Bank of*

*America N.A. v. Estrella III Homeowner's Association*, No.2:16-cv-02835-APG-DJA, 2020

WL 419004, at *3 (D. Nev. Jul. 21, 2020) (finding that a recission to a notice of default cancels

the acceleration for the purposes of NRS 106.240).   Therefore, the HOA's foreclosure sale was

invalid to the extent that it caused the extinguishment of the DOT.   While the sale remains

intact, BANA's DOT continues to encumber the Property, and NV Eagles' interest is subject to

this encumbrance.

       In light of this holding, NV Eagles cannot prevail even if the Court were to find it was a

bona fide purchaser for value. *See Bank of Am.*, *N.A. c. SFR Invs. Pool 1, LLC*, 427 P.3d 113,

121 (Nev. 2018) (en banc) ("Because a trustee has no power to convey an interest in land

securing a note or other obligation that is not in default, a purchaser at a foreclosure sale of that

lien does not acquire title to that property interest.").   Accordingly, the Court grants summary

judgment in favor of BANA with respect to its quiet title claim.

//

---

[1] NV Eagles claims that neither the 2011 Recission nor the 2018 Recission decelerated the debt.  First, NV
Eagles argues that the 2011 Recission was not proper because it did not explicitly decelerate the debt. (*See* NV
Eagles' MSJ 10:5–25 (citing *Cadle Co. II, Inc. v. Fountain*, No. 49488, 2009 WL 1470032, at *2 (Nev. Feb. 26,
2009) ("deceleration, when appropriate, must be clearly communicated by the lender/holder of the note to the
obligor"))).  However, the 2011 Recission states that BANA does "rescind, cancel and withdraw said Declaration
of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale;" the Nevada Supreme
Court found almost identical language to be an appropriate recission and deceleration of a debt. *See Glass v.
Select Portfolio Servicing, Inc.*, No. 78325, 2020 WL 3604042, at *1 (Nev. July 1, 2020) (language that the party
"does hereby rescind, cancel and withdraw the Notice of Default and Election to Sell" cancelled the
acceleration).  Second, while NV Eagles does not dispute that the 2018 Recission explicitly decelerated the debt,
NV Eagles asserts that the 2018 Recission is still inadmissible evidence because BANA did not provide the
document during discovery in violation of Federal Rules of Civil Procedure 26(a), 26(e), and 37(c). (*See
generally* NV Eagles' Reply, ECF No. 71).  However, because the 2018 Recission was recorded with the Clark
County Recorder and is a publicly available document, the Court takes judicial notice of the 2018 Recission. *See*
Fed. R. Evid. 201 (Judicial Notice of Adjudicative Facts); *Disabled Rights Action Committee v. Las Vegas
Events, Inc.*, 375 F.3d 861, n.1 (9th Cir. 2004) ("[the court] may take judicial notice of the records of state
agencies and other undisputed matters of public record"); (2018 Recission, Ex. A to BANA's Reply, ECF No.
69-1).  As such, both the 2011 and 2018 Recissions indicate that BANA rescinded its Notice of Default,
cancelling the acceleration.

### B.  BANA's Remaining Claim for Injunctive Relief

With regards to BANA's request for preliminary injunction pending a determination by the Court concerning the parties' respective rights and interest, the Court's grant of summary judgment for BANA moots this claim, and it is therefore dismissed. (*See* Compl. ¶¶ 73–79).

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that BANA's Motion for Partial Summary Judgment, (ECF No. 64), is **GRANTED.**

**IT IS FURTHER ORDRED** that NV Eagles' Motion for Summary Judgement, (ECF No. 66), is **DENIED.**

**IT IS FURTHER ORDERED** that BANA's claim for injunctive relief is **DISMISSED with prejudice.**

The Clerk of the Court is ordered to close the case.

**DATED** this __11__ day of January, 2021.

 

 

_____
Gloria M. Navarro, District Judge
United States District Court